Good morning, your honors. I am James Rosenberg. I am here on behalf of the appellant. This is a much simpler case than what I listened to earlier this morning. The case hits on two primary areas. Number one, it deals with the ability of the Board of Immigration Appeals, sua sponte, to set aside a previous ruling reopening the case, which has been very controversial, and which, to a certain extent, I agree with as brief, but to another extent, I strongly disagree. So if you'll allow me to present my views, and I'll make it rather brief, it's not going to run that long. Well, what about Kimian? I have read the case, which, by the way, I rather enjoyed, especially the descending opinion, which doesn't apply to this case. And it basically states that when there are factors involved, and by the way, it does state that sua sponte, the court has jurisdiction continuing to review and to remand or reverse a decision. I don't dispute that. What I dispute is timing, and timing becomes important on this for the following reasons. My client, as is pointed out, was removed from the United States. He was removed because he picked up his wife and children in San Diego. To my knowledge, he did not cross the border. He did not pick anybody else up. And they were smuggled into the United States because they were having problems in Armenia based on his problems in Armenia. I don't dispute that. He was removed from the United States. I'm not disputing that. It hasn't been raised as an argument. What I am disputing is that the court of appeals found that it didn't have jurisdiction to review that decision by the BIA. Is that right? They determined they didn't have the ability to review a decision by the BIA because they determined that there was no real standard set forth for which the circuit court of appeals could use for review. Isn't the same thing true here? Isn't the same thing true here? I don't believe so. And if I may continue, I personally think that the BIA had the right to review the decision. What I don't like, and what you may think I'm crazy in bringing to this Court, is the fact the way it was done, my client was denied the opportunity to file an asylum application. Why was he denied an opportunity? Because it must be filed one year of entry, which in this case was the reentry. And during that year, I actually tried to refile it with the proper office, and because it was before the immigration court, it was denied because it's already in front of an immigration judge. Now, what am I complaining about? Well, my client was removed. Obviously, somebody should have notified the Board of Immigration Appeals. I think that somebody should be the agency that was on the other side of the litigation. They didn't. I did not hide the fact that he was removed. It's in his declaration, which I prepared and filed in the immigration court. I laid it right out, and I laid out the problems he had after he went back to Armenia, which included an illegal arrest, a beating, a hospitalization, and a second escape. When he came back in, there was no way I could get the case closed. It requires both parties. You should excuse the expression. I kind of flowed with it because we were back before a judge. Again, the declaration, which was filed at that point, said what had happened. We did not hide that he was removed. We didn't even cloak it. We laid it right out. I did several appearances with the client before an immigration judge before I was The immigration judge initially was a Judge Delbane, who is now retired. The trial attorney was a visiting Judge Anna Ho, who presently has been reassigned to Los Angeles. There was discussion before we started the trial. Judge Ho made a determination that because of, I don't want to exaggerate, she made a determination that she felt she still had jurisdiction to hear the case because there were new in Armenia, which we had documentation on. She did hear it. This comes up again at the Board of Immigration Appeals because, God forbid, I won. As to the whole family, we won. Now, we did bifurcate the wife and the two children, and they presently have been regranted asylum and, in fact, now have lawful permanent residency cards. If the court is interested, the wife has filed something at 730, two and a half years ago, which would extend the grant to her husband. Why it's taking two and a half years, I have no idea. It's always taken just one year. My argument is the timing on this denied my client the right to have an asylum hearing properly heard. I happen to agree that I'm not sure that the court had, by the court I mean the trial court, had jurisdiction under these conditions. I told everybody what had happened. If it is error, it is invited error, and it is not invited by me. It was invited not by my client. It was invited error by acts of the government attorney. And I don't see why my client is punished because the government either didn't know they were supposed to do something or it didn't click or they didn't have the manpower, which is what I think the real problem was, is they don't have the manpower. So the current status of the family is the wife and the two children are here in the United States, lawful permanent residence. Correct. And your client is in Armenia. No, he's still here. He's still here. He hasn't been removed a second time, although I don't know what's going to happen after this. Is he detained? No. No. Okay, so he's here. He is here. He's fine. He's working. He's working. Her grant of asylum was based exclusively on his testimony. So we're just waiting for the BIA to rule on the adjustment of status. I am waiting for the Department of Homeland Security to rule on an I-730 that normally takes a year and now takes two and a half. And I've been asking them why is it taking so long by doing what's called inquiries, and I've received no answer. I suspect they're delaying it, and this is just speculation. I suspect it's being delayed because they're waiting to see what happens here. But my argument, again, is not that the BIA lacked the jurisdiction. I think they had the jurisdiction to review their decision. My argument is the way it happened. My argument is that the BIA is not going to approve the BIA's asylum refile with the appropriate office because they refuse to take it. Well, okay. But you're not waiving any of the other arguments you made in your briefs, right? No. Okay. Why don't you reserve the remainder of your time. I will. Thank you. May it please the Court. Ari Nazaroff. I'm with the U.S. Department of Justice representing the Attorney General. I regret that we did not identify the issue in our brief, but I'm here to resolve that. There's no jurisdiction for this Court to review. The Court's dispositive precedent resolved the sole issue presented in this petition for review. What can we do with this fellow? You know, you've got a, I think Mr. Rosenberg pretty well stated what the case is and all. But here he is, his family's here, he's here, he's had a hearing in which he's determined he's entitled to asylum. And we say, well, yeah, but they didn't have jurisdiction to make that decision. He's been beaten. He's been in Armenia. He's been mistreated there. And is there anything that can be done to hurry up this adjustment of status? That would end everything. All right. Your Honor, this Court has no jurisdiction under its own precedent to review this case. Well, I know. Yeah, you told me that. But I'm asking you as a lawyer representing the Justice Department, what can you do to help this fellow? Well, Your Honor, Petitioner's talking about timing. He did not show up for the final when they didn't appeal that in absentia order. So you're saying there's nothing you can do to help him? Well, Your Honor, the I.J. decision doesn't exist because there's no jurisdiction. If you just let me finish with I.J. order became final. When it became final is a final order of removal. Right. When Petitioner was arrested smuggling his relatives into the United States, he was removed. When he was removed under the statutes, he has withdrawn all his appeals, and the Board recognized that. And as a result, after the train stops on April 4th, 2001, after he was removed and after his arrest, so after that, the Immigration Court and the Board had no jurisdiction to grant any of those decisions. And Your Honor, the important thing about that is the Immigration Court and the Immigration So they, if they don't have a jurisdiction, they can't make up jurisdiction. They can't make a ruling in a case they're not supposed to have in the first place. And so there is no immigration decision. And others have stopped. Well, there's a decision, but it was made without jurisdiction, isn't that what you're saying? The Court couldn't make a jurisdiction. We're not talking about jurisdiction in the Article III sense. We're talking about prudential jurisdiction, right? I'm talking about, that's right, that the Board and IJ... You do know the difference. We're talking about an administrative decision. It's not an Article III decision, which would absolutely say there's no case or controversy. We're talking about a prudential decision that there wasn't jurisdiction here. Well, there's no jurisdiction all around. There's no jurisdiction for the Board and IJ to make the decision that is here. That's been erased. And there's no jurisdiction in this Court. Okay, that's where I want to go with you. First of all, Ekiminian said that there was no jurisdiction to review a Board decision not to sua sponde reopen, correct? It did not say there was no jurisdiction to review a decision to exercise sua sponde reopening, did it? Well, Your Honor, I believe that... I think that's a yes or no. That's a yes or no answer. Could you repeat that, please? Okay. What did Ekiminian... Ekiminian said there was no jurisdiction in our Court to review the decision of the BIA not to reopen a decision sua sponde, right? That's right. And all... Wait, wait, wait. It did not say there was no jurisdiction to review a decision to sua sponde reopen. No, Your Honor. We would say that the entire sua sponde deliberation process and the legal and the factual analysis that goes into it is not subject to judicial review in this Court. Now you have to... I understand what you're saying, a very conclusory statement, but when you go into the rationale of the Ekiminian case and its predecessor cases, the reason there's no jurisdiction is because there's no meaningful standard by which we can review it, right? That's correct, Your Honor. Okay. Well, here we do have... The BIA has a decision in Re GD that does tell us when the Board may sua sponde reopen a case, and it says that the Board may at any time reopen or reconsider its own motion in any case in which it has rendered a decision, but it is only to be used in extraordinary cases, and it's not meant to fix government motions that are untimely. Isn't that what happened here? No, Your Honor. Well, Your Honor... Isn't it untimely to make a motion to say that there was no jurisdiction two years ago? I mean, wouldn't it be timely to say that there was no jurisdiction at the time? Well, Your Honor, I think the important thing is that the Board on its own reopened. It didn't comment. Oh, but that's another question I have. I don't know if... Are you familiar with this case, Guevara v. Gonzales from the Fifth Circuit? No, I'm not, Your Honor. There, the Fifth Circuit... I can give you the site. It's 450F3D173. There, what the Fifth Circuit said in its concurring opinion was that you have to actually look at whether this is, in fact, a sua sponde. Reopening. I think that's a question of law over which we would have jurisdiction. And here, the Board didn't... I mean, it says, its order says it's considering on its own motion, but it's actually addressing the only argument that the DHS made on appeal from the underlying grant of asylum. So how can it... It got a document from the DHS, which presented a particular argument. It responds to that and addresses that argument. How can we truly say that that is a sua sponde reopening? Because, Your Honor, this sua sponde reopening is just like a McKimian. Usually... But McKimian denied it. It's not just like a McKimian. Well, in that, Your Honor, usually the sua sponde decisions are generally one-liners. We deny to reopen on our own motion. We deny it sua sponde. In this case, the Board did something it didn't have to do, is that it made its deliberation process public. It did not have to do that, but it did make it public. And that's why this makes the decision a little different than the ones you usually see. But, however, the legal analysis and the factual analysis is still part and parcel of the sua sponde deliberations. And there's really no way to go around that. And that deliberation is discretionary. But what are the... What are... Are there any limitations on the BIA's ability to reopen something that it says it's reopening sua sponde? Well, the statute of regulation gives it power to reopen on its own, Your Honor. Well, the Seventh Circuit has suggested that there is a reasonable limitation on it that should be read into the language in Section 1003, that the Board can reopen at any time, that there's a reasonableness interpretation there. Again, Your Honor, this Court has held an echemean, that it cannot look at the deliberation process, that there is a deliberation process here that's been made public, that in most sua sponde decisions it does not make public. But it's still, whether it's the legal analysis, whether it's the factual analysis, it's still part and parcel of the sua sponde determination, which is discretionary, which this Court stated that it is discretionary. And all those parts of the deliberation factors are all under this sua sponde umbrella. Petitioner... Petitioner's other arguments... A lot of petitioner's arguments are exhausted. He did not file a brief before the Board. And as a result, he can't raise them here today. I think... You know, it's just, I mean, I can see several legal arguments why your position is wrong, but I think as Judge Thompson suggested, isn't this one of those cases where this man clearly deserves asylum? He's been found to deserve asylum. And he's got an application in for it, for an adjustment now. Isn't that something you might want to consider, you know, at least talking to him about resolving? Your Honor, I'll take concerns back to my bosses. But again, the immigration decision does not exist. The Board order which we amended does not exist. The Board and the IJA are creatures of regulation. They cannot make those decisions. Well, how about if we send you to our Ninth Circuit mediator who's been successfully resolving many similar cases? Well, again, Your Honor, I will take those concerns to my supervisors. But the dispositive precedent in this case is akimian. And this is a sua sponte decision by the Board, which this Court has no jurisdiction to review. And any of the other things Petitioner's counsel brought up are not in the record. And he did not exhaust down below. I see my time is up. Okay. Thank you. Thank you, Your Honor. I move that the petition for review be dismissed under akimian. Thank you. If it please the Court, may I use a few of the 2 minutes, 21 seconds I have? Assuming for a moment this Court decides that the jurisdiction really isn't there for Judge Hoh to have granted, I would ask this Court to consider the possibility of ordering that we be allowed to file an asylum application before the appropriate asylum office as if we're within the first year, because that's what we were denied the opportunity to do. What's our authority for doing that? To be perfectly honest, I have no idea. But you know our correct law clerks will find it, right? But it's fair, because that's what I wasn't allowed to do for this client. And what will probably happen is the I-731 will probably end up being approved next month, and this whole thing will end up moot. I don't know what's causing that delay. But that ultimately will resolve the entire problem. Now, I don't understand why we would be spending all this time and money on this case. But... Because I don't want my client to go back to the country in first. No, I know why you're fighting. I'm saying why the government would be doing that if this other way, this other adjustment thing is likely to be granted. Well, I greatly appreciate the Court's logic. I agree with your logic. But that I have no control over. And I thank you very much for your time. All right. Thank you very much. Kerrigan v. McKayse is submitted, and we will take up Bennett v. Terhune.
judges: Thompson, Wardlaw, Reed